NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUISEPPI IUDICI,<br><br>Plaintiff,<br><br>v.<br><br>PASSAIC COUNTY SHERIFF'S DEPARTMENT, et al.,<br><br>Defendants. | Civil Action No.: 12-cv-3466<br><br>OPINION |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court by way of Defendants Passaic County Sherriff's Department, County of Passaic, Joseph F. Camisa, Jason Degroat, Ryan Dockray, John Held, and Michael F. Pascale's (collectively, "Defendants") motion for summary judgment as against Plaintiff Guiseppi Iudici ("Plaintiff"). (ECF No. 38). Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. After reviewing the submissions made in support of and in opposition to the instant motion and for the reasons set forth below,[1] Defendants' motion is granted in part and denied in part.

## II. BACKGROUND

"On February 10, 2011, a warrant for the arrest of [Plaintiff] was issued by the Superior Court of New Jersey, Chancery Division, Family Part" for "failure to pay child support in the amount of $3,150.00, as directed by the court."[2] (ECF No. 38-2 at 3-4). "Passaic County Sheriff's Officers first attempted to execute the warrant on February 16, 2011." (Id. at 4). Nonetheless,

---

[1] The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991).
[2] Unless otherwise indicated, the following factual background is not disputed by the parties.

1

"[u]pon appearing at [Plaintiff's] residence they spoke with [Plaintiff's] son, Angelo, who told them his father was not there and allowed them to search the apartment." (*Id.*).

On February 17, 2011, "Passaic County Sheriff's Officer Joseph F. Camisa, Sheriff's Officer Jason Degroat, Sheriff's Officer Michael Pascale, Sheriff's Officer John Held and Sheriff's Officer Ryan Dockray proceeded to [Plaintiff's] residence to execute the warrant" again. (*Id.*). According to Defendants, "Sheriff's Officer John Held checked that the warrant was still active prior to proceeding to [Plaintiff's] residence on February 17, 2011."[3] (*Id.*). Moreover, Defendants aver that "Off[icer] Dockray checked the[] computer on the morning of the 17th to determine whether the child support had been paid."[4] (*Id.* at 5). Defendants also contend that "Sheriff's Officer Jason Degroat testified that the first thing they did in the morning was to check the warrants to make sure they were still active."[5] (*Id.*).

"Upon reaching [Plaintiff's] home the Officers knocked on the front door and were ultimately admitted by the female resident of the second floor apartment who identified a picture of [Plaintiff] and indicated that if a black BMW was around (which it was) then he was at home."[6] (*Id.* at 6). Defendants then knocked on Plaintiff's door, and after receiving no response attempted to see whether the door was unlocked.[7] (*Id.*). "Upon trying the door, they found it was open and

---

[3] In Plaintiff's response to Defendants' statement of material facts, Plaintiff denies this statement on the basis that "[t]his is a question of fact to be determined by the jury." (ECF No. 41 at 5).
[4] Plaintiff admits "that this was Officer Dockray's testimony" but denies "that the procedure was followed in this case." (*Id.* at 6).
[5] Plaintiff admits "that this was Officer Degroat's testimony" but denies "that the procedure was followed in this case." (*Id.*).
[6] Plaintiff denies this statement; however, Plaintiff cites to no "affidavits [or] other documents submitted in connection with the motion," L. Civ. R. 56.1, to support Plaintiff's denial.
[7] *See supra* note 6.

entered the residence, identifying themselves as police officers as they entered the apartment."[8] (*Id.*). Defendants maintain that no "device was used to force open the door."[9] (*Id.*).

In searching Plaintiff's apartment, Defendants contend that they "located [Plaintiff] hiding under the covers on his bed" who told them "to 'get the f*** out of [his] house' and resisted the officers' attempts to arrest him."[10] (*Id.*). Moreover:

> Officers Degroat and Camisa attempted to pull [Plaintiff] out of the bed but he kept throwing his hands and feet. Degroat, Camisa and [Plaintiff] all fell up against the adjacent dresser and then to the ground. [Plaintiff] continued to resist the officers' control by flailing and rolling around the bedroom floor. Control over [Plaintiff] was finally achieved by one officer kneeling his back and two officers securing him with handcuffs. At no time during [Plaintiff's] arrest did he inform the officers that he had paid the child support at issue or offer to show them documentation of a payment. Plaintiff testified that when he heard the officers banging on the door he yelled that the door was open. Nobody made any comments to him when he was led out of the house or addressed the event with him later.[11]

(*Id.* at 6-7).

Plaintiff was then "secured in the back of the Officer's vehicle and transported to headquarters for processing." (*Id.* at 7). He was charged with resisting arrest. (*Id.*). "While at headquarters he began complaining of head pain, was examined by an EMT in the cellblock and subsequently transported to St. Joseph's Hospital for further examination." (*Id.*). Although initially found guilty of resisting arrest, Plaintiff's conviction was reversed and vacated. (*Id.*).

On March 23, 2012, Plaintiff filed a complaint against Defendants in state court. (ECF No. 1). On June 8, 2012, Defendants removed the matter to this Court. (*Id.*). After a series of unsuccessful mediations, on September 15, 2017, Defendants filed a motion for summary

---

[8] *See supra* note 6.
[9] *See supra* note 6.
[10] *See supra* note 6.
[11] *See supra* note 6.

judgment. (ECF No. 38). Plaintiff and Defendants subsequently filed a number of additional submissions, which have been duly considered by the Court.

## III. DISCUSSION

### A. Motion for Judgment on the Pleadings Under Federal Rule of Civil Procedure 12(c)

#### 1. Legal Standard

Although Defendants filed a motion for summary judgment, they make a number of arguments that certain of Plaintiff's claims fail to state a claim upon which relief may be granted. Accordingly, the Court will treat such arguments as filed under a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Trustees of Univ. of Pa. v. Mayflower Transit, Inc.*, No. 97-1111, 1997 WL 598001, at *2 (E.D. Pa. Sept. 16, 1997).

"A movant under Rule 12(c) must demonstrate that no material issues of fact exist and that it is entitled to judgment as a matter of law." *Shaw v. Hayt, Hayt & Landau, LLC*, No. 15-8852, 2016 WL 3965204, at *3 (D.N.J. July 21, 2016) (citing *Rosenau v. Uniford Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). "A district court, when reviewing a Rule 12(c) motion, is limited to the facts stated in the pleadings. All inferences related to those facts are viewed in the light most favorable to the nonmoving party." *Id.* (citing *Rosenau*, 539 F.3d at 221).

#### 2. Analysis

##### a. Count One (Excessive Force)

Count one of Plaintiff's complaint alleges that Defendants Joseph F. Camisa, Jason Degroat, Ryan Dockray, John Held, and Michael F. Pascale (the "Officer Defendants")[12] used excessive force in the course of arresting Plaintiff, in violation of 42 U.S.C. § 1983 (ECF No. 1 at

---

[12] Plaintiff's excessive force claim as to the Officer Defendants will be addressed *infra* in Section III.B.2.i.

4

10-12). Plaintiff further argues that Defendants Passaic County Sherriff's Department and County of Passaic (the "Passaic Defendants") should be "jointly, severally and individually" liable. (*Id.* at 12).

With respect to the Passaic Defendants, local government units, like the Passaic Defendants, "are not liable under section 1983 solely on a theory of respondeat superior." *Thomas v. Att'y Gen. of N.J.*, 692 F. Supp. 2d 444, 450 (D.N.J. 2010). Rather, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Thus, to establish municipal liability under section 1983, 'a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.'" *Thomas*, 692 F. Supp. 2d at 450 (citations omitted). In other words, "[a] plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury." *Id.* (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 689 (1978)).

Here, the Passaic Defendants contend that Plaintiff has failed to adequately plead a *Monell* claim because he has failed to clearly identify a policy or a custom. (ECF No. 38-2 at 13-14). Conversely, Plaintiff maintains that he has adequately alleged that the Passaic Defendants had a custom of "the repeated execution of a warrant under a clear conflict of interest [which] created a situation where the [Passaic Defendants] knew or should have known of the dangers of this policy and taken steps to prevent it." (ECF No. 41 at 19). Plaintiff argues that the Passaic Defendants' "repeated permitting of this conflict of interest was the primary motivating force in the deprivation of the [Plaintiff's] Constitutional rights in this matter." (*Id.*).

5

The Court agrees with the Passaic Defendants. In his complaint, Plaintiff sets forth neither a policy nor custom which deprived Plaintiff of a constitutional right. *See May v. Borough of Pine Hill*, No. 10-2628, 2014 WL 2931020, at *4 (D.N.J. June 30, 2014). More specifically:

> Plaintiff has not alleged that [the Passaic Defendants], or a decisionmaker on behalf of [the Passaic Defendants], issued an official proclamation, policy, or edict or that there was [a] permanent and well-settled custom. "To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what exactly that custom or policy was."

*Id.* (citations omitted).

In his complaint, Plaintiff alleges that the Passaic Defendants were "at all times acting under color of law to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the United States, State of New Jersey, County of Passaic and Passaic County Sherriff's Department in their official and individual capacities." (ECF No. 1 at 11). Nonetheless, this statement identifies no custom or policy, and "[b]ecause . . . th[is] allegation[ is] conclusory in nature, the Court need not credit same." *May*, 2014 WL 2931020, at *5.

Moreover, the only other facts in support of a policy or custom alleged by Plaintiff in his brief in opposition to Defendants' motion for summary judgment concern actions taken against Plaintiff. Nevertheless, "actions taken against Plaintiff alone are insufficient to establish custom that can give rise to municipal liability." *Id.*; *see also* (ECF No. 41 at 19 ("The same execution had been conducted by the Sheriff's department on at least two previous occasions.")). "As such, on the facts alleged, Plaintiff fails to sufficiently plead a *Monell* claim." *May*, 2014 WL 2931020, at *5. Thus, the Passaic Defendants are granted judgment on the pleadings with respect to the first count of Plaintiff's complaint.[13]

---

[13] The Court also notes that "[t]he numerous courts that have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not." *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808,

6

### b. Count Two (Good Name and Reputation)

Count two of Plaintiff's complaint alleges that "Defendants' conduct violated Plaintiff's rights to his reputation and good name as guaranteed under the U.S. and New Jersey Constitutions as per 42 U.S.C. 1983 et seq." (ECF No. 1 at 12).

"In *Wisconsin v. Constantineau* . . . the Supreme Court held that an individual has a protectable interest in his reputation. The Third Circuit has subsequently clarified, however, that 'reputation alone is not an interest protected by the Due Process Clause.'" *Torrey v. New Jersey*, No. 13-1192, 2014 WL 941308, at *9 (D.N.J. Mar. 11, 2014) (citing *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1371 (3d Cir. 1993)). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). "In other words, damage to reputation 'is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution.'" *Torrey*, 2014 WL 941308, at *9 (citations omitted).

Here, Plaintiff asserts that "[t]he actions and deliberations of the defendant police officers intentionally and maliciously damaged Plaintiff's good name and reputation without justification. Defendants' conduct violated Plaintiff's rights to his reputation and good name as guaranteed under the U.S. and New Jersey Constitutions as per 42 U.S.C. 1983 et seq." (ECF No. 1 at 12). "Other than harm to reputation, [however, Plaintiff] identifies no other right or status which has been implicated. Accordingly, []he fails to state a claim upon which relief can be granted." *Lahaza v. Azeff*, 790 F. Supp. 88, 93 (E.D. Pa. 1992) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). Thus,

---

825 (D.N.J. 1993). For this additional reason, the Defendant Passaic County Sheriff's Department is granted judgment on the pleadings with respect to the first count of Plaintiff's complaint.

7

Defendants are granted judgment on the pleadings with respect to the second count of Plaintiff's complaint.

### c. Count Four (Negligent Training)

Count four of Plaintiff's complaint alleges that the Passaic "Defendant[s] negligently trained the officers . . . ." (ECF No. 1 at 13). "In New Jersey, the elements of a cause of action for negligence are: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate cause; and (4) actual damages." *Gardner v. N.J. State Police*, No. 15-8982, 2016 WL 6138240, at *4 (D.N.J. Oct. 21, 2016). "The tort[] of negligent training . . . require[s] the plaintiff to show the four elements of negligence." *Id.*

Plaintiff's claim for negligent training as to the Passaic Defendants does not adequately plead the breach and proximate cause elements. *See id.* More specifically, Plaintiff's complaint merely alleges that "Defendant negligently trained the officers[.]" (ECF No. 5 at 6). "The pleading standard requires more than mere conclusory statements." *Gardner*, 2016 WL 6138240, at *4. "In addition, the [c]omplaint does not adequately plead that [the Passaic Defendants'] training . . . w[as] a proximate cause of Plaintiff's injuries." *Id.* "Establishing the proximate cause element requires showing that the injury would not have occurred 'but for' the defendant's negligence, and Plaintiff makes no such showing here." *Id.* (citations omitted). Thus, the Passaic Defendants are granted judgment on the pleadings with respect to the fourth count of Plaintiff's complaint.[14]

### d. Count Five (Miscellaneous Constitutional Violations)

Count five of Plaintiff's complaint alleges violations of the Eighth and Fourteenth Amendments of the United States Constitution, as well as Article I Paragraph 1 of the Constitution of the State of New Jersey. (ECF No. 1 at 14-15). Although Defendants do not acknowledge

---

[14] Plaintiff does not appear to bring count four as against the Officer Defendants.

8

count five of Plaintiff's complaint in their motion, the Third Circuit has "confirmed that 'for a court to grant judgment on the pleadings, sua sponte, is not error.'" *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, No. 09-1661, 2010 WL 3975627, at *4 (M.D. Pa. Oct. 8, 2010) (citing *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980)), *aff'd*, 432 F. App'x 143 (3d Cir. 2011).

With respect to Plaintiff's Eighth Amendment claim, "[b]ecause [Plaintiff] was not a convicted criminal at the time of the alleged incident, his Eighth Amendment rights had not yet attached." *Setchko v. Twp. of Lower Southampton*, No. 00-3659, 2001 WL 229625, at *2 (E.D. Pa. Mar. 8, 2001). Accordingly, "Plaintiff's allegation that he was subjected to cruel and unusual punishment during the course of his arrest . . . does not warrant an individual cause of action under the Eighth Amendment." *Id.*

With respect to Plaintiff's Fourteenth Amendment and New Jersey State Constitution claims, Plaintiff's complaint is "rife with broad-reaching legal conclusions . . . . that the Supreme Court has stated 'will not do.'" *Dunne v. Twp. of Springfield*, No. 08-5605, 2010 WL 2652460, at *2 (D.N.J. June 25, 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiff's claim states that "[t]he conduct of defendants as described in the foregoing Counts of the Complaint deprived the Plaintiff of . . . his right not to be deprived of life, liberty or property without due process of the laws as guaranteed under the Fourteenth Amendment to the United States Constitution[.]" (ECF No. 1 at 14). Moreover, Plaintiff's claim states that "[t]he conduct of defendants as described above also deprived the Plaintiff of his rights and privileges under Article I Paragraph 1 of the Constitution of the State of New Jersey[.]" (*Id.*; *see also id.* at 15 (same)). "Clearly, these broad-reaching, scattershot, yet entirely undefined allegations fail to set forth fair notice of what [Plaintiff's] claim is and the grounds upon which it rests." *Dunne*, 2010 WL

2652460, at *2. Thus, Defendants are granted judgment on the pleadings with respect to the fifth count of Plaintiff's complaint.

### B. Motion for Summary Judgment

#### 1. Legal Standard

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to meet its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must exceed "the 'mere scintilla' threshold . . . ."). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* In considering

a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

2. **Analysis**

   i. **Count One (Excessive Force)**

As discussed above, count one of Plaintiff's complaint alleges the use of excessive force by the Officer Defendants in violation of 42 U.S.C. § 1983. "A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights." *Thomas*, 692 F. Supp. 2d at 449. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

> Thus, a plaintiff must demonstrate two essential elements to maintain a claim under section 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law.

*Thomas*, 692 F. Supp. 2d at 449 (citations omitted).

The Officer Defendants have moved for summary judgment on Plaintiff's excessive force claim on the grounds of qualified immunity. "The doctrine of qualified immunity provides that 'government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Id.* at 450 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Consequently, "government officials are immune from suit in their

11

individual capacities unless, 'taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right' and 'the right was clearly established' at the time of the objectionable conduct." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 450-51 (citing *Saucier*, 533 U.S. at 202). "That is, '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 451 (quoting *Couden v. Duffy*, 446 F.3d 483, 492 (2006)). "'If the officer's mistake as to what the law requires is reasonable,' the officer is entitled to qualified immunity." *Id.* (quoting *Couden*, 446 F.3d at 492). "Further, '[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized.'" *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant." *Id.*

"A Fourth Amendment excessive force claim calls for an evaluation of whether police officers' actions are objectively reasonable in light of the facts and circumstances confronting him." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "While the question of reasonableness is objective, the court may consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* "Furthermore, appropriate attention should be given 'to the circumstances of the police action, which are often "tense, uncertain, and rapidly evolving."'" *Id.* (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995)).

Here, the Officer Defendants maintain that when they identified Plaintiff "hiding under the covers on his bed," (ECF No. 38-2 at 6), "Plaintiff told them to 'get the f*** out of [his] house' and resisted the officers' attempts to arrest him." (*Id.*). Moreover, the Officer Defendants contend that after they "attempted to pull [Plaintiff] out of the bed . . . he kept throwing his hands and feet" and "continued to resist the officers' control by flailing and rolling around the bedroom floor." (*Id.*). Conversely, Plaintiff avers that he was confronted by the Officer Defendants "holding a pistol in a threatening manner." (ECF No. 40-7 at 2). Plaintiff alleges that he:

> [T]old the officers that there was a misunderstanding and that [he] paid the outstanding support amount. [He] was ordered to get out of [his] bed. [He] stood up (naked at this time) and repeated that [t]here was a mistake, the amount due was paid yesterday and that [he] had a receipt in [his] nightstand. [He] was open-hand punched in the face and [he] fell to the floor. While [he] was on the floor, [he] was struck by the handgun on the back of [his] head. One or more officers then put their knees [o]n [his] back and handcuffed [him].

(*Id.*).

> A reasonable factfinder, accepting Plaintiff's testimony and discrediting the officers' accounts of their conduct during the course of the arrest, could conclude that Plaintiff did not pose a serious threat to the safety of the officers and that the arresting officers' use of force to subdue him was unreasonable under the circumstances.

*Thomas*, 692 F. Supp. 2d at 451. Accordingly, "there are genuine issues of material fact as to whether the officers violated a clearly established constitutional right." *Id.* Thus, Defendants' motion for summary judgment as to count one of Plaintiff's complaint as against the Officer Defendants is denied.

### ii. Count Three (Probable Cause)

Count three of Plaintiff's complaint alleges violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983 for arrest without probable cause. (ECF No. 1 at 13). More specifically, Plaintiff contends that Plaintiff "has testified that prior to the arrest, he informed the officers that he had paid the support obligation and had a receipt, offering to show it to them." (ECF No. 41 at

13

14). "However, this does not establish a violation of constitutional rights. The United States Supreme Court has clearly established that an officer 'executing an arrest warrant is not required by the constitution to investigate independently every claim of innocence.'" *Wise v. City of Phila.*, No. 97-2651, 1998 WL 464918, at *1 (E.D. Pa. July 31, 1998) (citing *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)). "This is so even if the arrest was made pursuant to a bench warrant that was invalid at the time of arrest." *Id.*

Here, however, Plaintiff additionally argues that "[t]he issue of whether the [Officer Defendants] really did check to determine if the warrant was still active is a matter of credibility to be determined by the jury." (ECF No. 41 at 14). The Court disagrees.

"The Third Circuit has held that an officer who reasonably relies on the existence of a warrant for arrest is entitled to qualified immunity in a civil rights action brought against him for unlawful arrest." *Wise*, 1998 WL 464918, at *2 (citing *Capone v. Marinelli*, 868 F.2d 102, 105-06 (3d Cir. 1989)). "The court must determine, as a matter of law, whether a defendant's 'belief that a warrant or probable cause existed was reasonable.'" *Id.* (citing *Sharrar v. Felsing*, 128 F.3d 810, 828 (3d Cir. 1997)). "To make this determination, the court must examine the information possessed by the defendants when they relied on the warrant." *Id.*

The Officer Defendants here contend that they had probable cause to arrest Plaintiff because:

> A warrant for [Plaintiff's] arrest was issued by the Superior Court of New Jersey, Chancery Division. Prior to executing the warrant on February 17, 201[1], the [Officer Defendants] checked to ascertain whether the warrant was still active. Since the system did not indicate that the warrant had been withdrawn and/or that the arrears had been paid, the [Officer Defendants] proceeded to [Plaintiff's] residence to execute same. The [Officer Defendants] acted in good faith in executing the warrant.

(ECF No. 38-2 at 8). To support their arguments, the Officer Defendants offer the sworn testimony of Officer John Held, Officer Ryan Dockray, and Officer Jason Degroat. (*Id.* at 4-5; ECF No. 38-

14

3 at 19-20 (Officer John Held testifying that "[w]e checked it three times that morning" and "our records indicated that it was still active"); *id.* at 32 (Officer Ryan Dockray testifying that "[t]he morning of[,] I checked our computer to see if it was taken care of and it wasn't"); *id.* at 43 (Officer Jason Degroat testifying that "I know that the warrants that -- that we hit, that the guys checked that. Our procedure is to check them every day.")).

In response, Plaintiff provides no evidence raising a genuine issue of material fact as to the reasonableness of the Officer Defendants' actions. Rather, Plaintiff contends that whether the Officer Defendants are telling the truth is to be determined by the jury. This is not the standard applied in the Third Circuit. *See Wise*, 1998 WL 464918, at *2 ("The court must determine, as a matter of law, whether a defendant's 'belief that a warrant or probable cause existed was reasonable.'"). Given the testimony provided by the Officer Defendants, the Court finds it reasonable for the Officer Defendants to have believed probable cause existed to arrest Plaintiff based on the presence of an outstanding warrant on their databases.[15] Accordingly, Defendants' motion for summary judgment as to count three of Plaintiff's complaint as against the Officer Defendants is granted.[16]

Moreover, Plaintiff further argues that there was no probable cause for the resisting arrest charge. (ECF No. 41 at 13). Nonetheless, "[p]robable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d

---

[15] To the extent Plaintiff may contend that the Officer Defendants are liable because New Jersey Kids, the organization that keeps track of child support payments, failed to update its computer system, Plaintiff's argument fails. *See Wise*, 1998 WL 464918, at *2 ("Defendants cannot be held liable under § 1983 where they rely on a computerized record or a warrant which is inaccurate because of a clerical error.").

[16] "Because . . . as a matter of law there is no cause of action under 42 U.S.C. § 1983" as against the Officer Defendants, *Mann v. Twp. of Hamilton*, No. 90-3377, 1991 WL 87586, at *3 (D.N.J. May 20, 1991), Defendants' motion for summary judgment as to count three of Plaintiff's complaint as against the Passaic Defendants is also granted.

15

Cir. 1994). Having found that probable cause existed for the arrest for failure to pay child support, the Court finds Plaintiff's argument without merit. To the extent Plaintiff alleges a malicious prosecution claim in its opposition to Defendants' motion for summary judgment, "[i]t is well-settled that courts need not consider additional claims that are raised for the first time in briefing." *Maier v. Pall*, No. 09-1427, 2014 WL 1912194, at *7 n.5 (M.D. Pa. May 13, 2014), *appeal filed*, No. 14-2955 (3d Cir. June 11, 2014). Here, Plaintiff's complaint alleges that "Defendants illegally arrested Plaintiff without probable cause and without Plaintiff's consent and against Plaintiff's will on the date of the incident." (ECF No. 1 at 13). Because Plaintiff failed to raise a malicious prosecution claim in his complaint, the Court need not address this issue. *See Aldinger v. Spectrum Control, Inc.*, 207 F. App'x 177, 181 n.1 (3d Cir. 2006).

### iii. Count Six (New Jersey Tort Claims Act)

Plaintiff also brings a claim under the New Jersey Tort Claims Act. Because Plaintiff's complaint states that the cause of action being alleged is for "intentionally, recklessly and negligently str[iking] and injur[ing] the Plaintiff," the Court assumes the claim Plaintiff has alleged is one for assault and battery.[17] (ECF No. 1 at 15; *see also* ECF No. 41 at 23 (describing the Officer Defendants' actions as "brutaliz[ing] a lone individual")).

> In order to succeed on this claim, Plaintiff must demonstrate that [the Officer Defendants] attempted to cause, or purposely, knowingly or recklessly caused [him] bodily injury. Under New Jersey law, a law enforcement officer "may use such force as is reasonably necessary under the circumstances" to effect a lawful arrest. Where excessive force is used, police officers may be liable for assault and battery.

---

[17] The Court's interpretation is consistent with the Notice of Claim for Damages Against the County of Passaic, which was served on April 8, 2011, which states that "Passaic County Sheriff's officers executing child support warrant assaulted claimant . . . ." (ECF No. 45-1 at 3; *see also id.* at 4 ("Passaic County Sheriff's officers assaulted claimant . . . .")).

16

*Raab v. City of Ocean City*, No. 11-6818, 2014 WL 3894061, at *10 (D.N.J. Aug. 8, 2014) (citations omitted).

"If a police officer acts 'in good faith in the execution or enforcement' of the law, he is entitled to immunity from suit under the New Jersey Tort Claims Act." *Id.* (citations omitted). "In addition, New Jersey law provides immunity to public employees for injuries 'resulting from the exercise of judgment or discretion vested in [them.]'" *Id.* (citations omitted). The Officer Defendants assert that both of these immunities apply.

> However, the Tort Claims Act does not immunize public employees from any willful misconduct. Courts in this district have thus allowed tort claims to proceed against law enforcement officers when sufficient evidence is produced that could support a finding that officers acted intentionally and recklessly in a display of force.

*Id.*

Here, "there are genuinely disputed material facts that could lead a jury to conclude that [the Officer Defendants] used excessive force as outlined above." *Id.* at *11. "Because there is a genuine question of fact regarding the reasonableness of [the Officer Defendants'] conduct, [they are] not entitled to immunity . . . . If the facts are viewed in the light most favorable to Plaintiff, [his] injury was not caused by resisting or evading arrest." *Id.* Accordingly, Defendants' motion for summary judgment as to count six of Plaintiff's complaint as against the Officer Defendants is denied.

With respect to the Passaic Defendants, however:

> Pursuant to the New Jersey Torts Claims Act, a municipality does not bear liability for any intentional or willful misconduct committed by its employees. N.J.S.A. 59:2-10 provides that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." Thus, "N.J.S.A. 59:2–10 creates municipal immunity for intentional public employee misconduct."

17

*Marquez v. City of Perth Amboy*, No. 09-909, 2013 WL 6865162, at *9 (D.N.J. Dec. 20, 2013) (citations omitted). Accordingly, Defendants' motion for summary judgment as to count six of Plaintiff's complaint as against the Passaic Defendants is granted.[18]

## IV. CONCLUSION

For the reasons stated above, Defendants' motion is granted in part and denied in part. An appropriate Order accompanies this Opinion.

Dated: June 15, 2018

CLAIRE C. CECCHI, U.S.D.J.

---

[18] Having granted judgment on the pleadings or summary judgment on all counts in favor of the Passaic Defendants, the Court need not address whether Plaintiff may recover punitive damages from the Passaic Defendants. The Court notes, however, that "[p]unitive damages are not recoverable against a municipality under a § 1983 claim." *Setchko*, 2001 WL 229625, at *1 n.2.